Charles B. MILLER, Superintendent, State of Indiana Department of Corrections, Appellant (Respondent Below),

v.

Breland D. WALKER, Appellee (Petitioner Below).

STATE of Indiana, Appellant (Respondent Below),

v.

William C. MASON, Appellee (Petitioner Below).

Nos. 48S05–9503–CV–340, 48S05–9503–CV–340.

Supreme Court of Indiana.

Aug. 25, 1995.

As Corrected Aug. 28, 1995.

Pamela Carter, Attorney General, David A. Arthur, Deputy Attorney General, Indianapolis, for appellants.

Richard A. Waples, Indiana Civil Liberties Union, Indianapolis, for appellees.

## ON PETITION TO TRANSFER

SHEPARD, Chief Justice.

How should the Department of Correction account for credit time awarded to prisoners who successfully complete educational programs during their stay behind bars?

The Department currently applies the credit to the term of years imposed by the sentencing court. Appellants in these cases assert that the credit time should instead be subtracted from the earliest possible release date, after taking into account the maximum *anticipated* allotment of credit time from other sentence-reducing mechanisms before applying the educational credit. The Court of Appeals held that the Department was correct, and we agree.

While imprisoned following their separate convictions for various unrelated felonies, appellants Breland Walker and William Mason set about to obtain educational credentials. Walker successfully took the general educational development (GED) tests and earned a high school equivalency certificate.[1] Mason completed the bachelor of science pro-

---

1. Ind.Code Ann. §§ 20–10.1–12.1–1(a)(3), (b)(1) (West 1995). *See also* 511 Ind.Admin.Code 5–1–1(a) (1992). The educational credit statute here at issue, Ind.Code Ann. §§ 35–50–6–3.3(a)(2)(A), –3.3(b)(1) (West Supp.1994), refers to the high school equivalency statute (§ 20–10.1–12.1–1(b)(1)), but lists the credential as a "general equivalency degree." Both parties stipulated that Walker's high school equivalency cer-

tificate qualifies him for the credit, and for purposes of this appeal we equate the two. The General Assembly apparently attempted to clarify this small discrepancy when it amended § 35–50–6–3.3 in 1995, substituting "a general educational development (GED) diploma under IC 20–10.1–12.1" for "general equivalency degree." 1995 Ind.Acts 1004, Sec. 7.

gram offered by Ball State University and received his degree. Walker's certificate qualified him for six months of credit time toward his sentence, Ind.Code §§ 35–50–6–3.3(a)(2)(A) and –3.3(b)(1) (West Supp.1994), while Mason's bachelor's degree merited a two-year credit, Ind.Code §§ 35–50–6–3.3(a)(2)(D) and –3.3(b)(4) (West Supp.1994).

There is no dispute that both appellants are entitled to receive the credit time they claim for their educational achievements. Rather, Walker and Mason challenge the State's method of computing their respective accelerated release dates.

Although we live in an era of determinate sentencing, convicts rarely stay in jail for the full term to which they were sentenced. Once locked up, prisoners begin accumulating additional credits which shorten the length of time they will be kept behind bars. Indeed, all inmates begin their stay automatically eligible for "good time" credit:[2] they earn one additional day of credit toward their sentence for every day of infraction-free incarceration.[3] Ind.Code Ann. 35–50–6–3(a) (West 1986). Thus, simply staying out of trouble can cut a prison stay in half, and credit for good time served is so ingrained in the prison system that judges, lawyers, and defendants alike frequently focus on the date they expect the guilty defendant to be set free. The "earliest possible release date" is therefore a common term in penal parlance.

In addition to good time credit, the pursuit of educational goals while in prison is another popular avenue for reducing one's time behind bars. As we noted above, inmates who attain certain educational milestones receive a specified amount of credit toward their sentences. The Department of Correction's application of educational credit time to sentences, however, has been subject to differ-

ent interpretations. In both Walker and Mason's cases, the trial judge read the educational credit statute to require any educational credit time come off of the earliest possible release date. The two cases were consolidated in the Court of Appeals. It reversed, finding that the statute unambiguously supported the Department's method of computing the credit. *Miller v. Walker* (1994), Ind.App., 642 N.E.2d 1000.

According to the statute, inmates earn educational credit time "in addition to any credit time" earned for good time served. This dispute centers on the interpretation of the meaning of the phrase "in addition to." If the Department of Correction subtracts the educational credit from the sentence, instead of from the prisoner's earliest possible release date, the practical effect is that the release date for most inmates is hastened by only half the stated length of the educational credit.

The following example is illustrative: A person sentenced to a six-year prison term can expect to serve only three years, assuming he serves all of his time as a Class I prisoner and thereby qualifies for a day of credit for each day served. If he earns a bachelors degree while in prison, entitling him to a two-year credit, he will need only four years of other credit to earn his release. Typically, he could earn those four years by staying in prison two years and registering two years good time. The degree thus allows him to leave prison in two years rather than three.[4] These prisoners contend, however, that the two-year credit should be applied to the original earliest possible release date. Under that sort of calculation, our hypothetical prisoner sentenced to six years would be released after one year in jail (three years of

---

**2.** *See* Ind.Code Ann. 35–50–6–4 (West 1986). Prisoners are assigned to one of three classes depending on the extent to which they violate prison rules or otherwise cause trouble. The rate at which they accumulate credit is determined according to their behavior classification. Everyone enters prison with a clean slate in Class I (one day's credit for each day served), and can only be reassigned to Class II (one day's credit for every two days served) or Class III (no credit) after a hearing. *Id.*

**3.** As the State is quick to point out, this credit does *not* reduce the sentence itself; upon release from prison, the former inmate is on parole for up to two years of the remainder of his sentence.

**4.** By contrast, if the same prisoner became assigned to credit Class III shortly after earning the degree and ceased to earn any good time at all, Ind.Code § 35–50–6–3(c) (West 1986), the degree would mean freedom two years earlier than would otherwise occur.

expected incarceration minus two years for earning the degree).

We think the Court of Appeals got it right. The ubiquity of good time credit notwithstanding, appellees and the trial courts overlook an essential element of credit calculation: the benefit is received only when it is earned. Thus, while the earliest possible release date frequently proves to be the actual release date, it is not automatically so. Only when a day of imprisonment is actually served, and then only if served as a Class I prisoner, is good time credit realized. "In addition to" means that the educational credit does not supplant any good time credit already earned.[5] Prisoners receive the full value of the educational credit under the Department's method of calculation.

We summarily affirm the opinion of the Court of Appeals. Ind.Appellate Rule 11(B)(3). The judgments of the trial courts are reversed.

DICKSON and SELBY, JJ., concur.

SULLIVAN, J., dissents with separate opinion in which DeBRULER, J., joins.

SULLIVAN, Justice, dissenting.

I do not disagree that the majority's explanation as to how the credit time for educational achievement program should work is sensible.

Nor do I disagree that the majority's explanation properly interprets the statute as amended by the legislature in 1995.

But I do disagree that the majority has properly read the statute as in effect prior to 1995. I think the statute is properly read to provide that a prisoner who successfully completes a G.E.D. test is entitled to be released six months earlier than would otherwise be the case and a prisoner who completes a bachelor's degree is entitled to be released two years earlier. Ind.Code § 35–50–6–3.3(b)(1) and (4) (1993), *subsequently amended by* 1995 Acts 148, § 7. As the majority points out, the legislature amended the stat-

ute earlier this year to provide that the credit time earned for educational achievement is to be deducted from the total sentence, rather than accelerate the release date. 1995 Acts 148, § 7. This change itself demonstrates that the trial courts in these cases were correct in their rulings. An amendment changing a prior statute indicates a legislative intention that the meaning of the prior statute has been changed. *Lake County Beverage Co. v. 21st Amendment* (1982), Ind.App., 441 N.E.2d 1008, 1011, *trans. denied.*

For these reasons, I would affirm the decisions of the trial courts in these two cases.

DeBRULER, J., joins.

---

**5.** The legislature has recently addressed this precise issue, amending the educational credit statute, Ind.Code § 35–50–6–3.3 (1994), to provide explicitly that educational credit be "subtracted

from the period of imprisonment imposed on the person by the sentencing court." 1995 Ind.Acts 1004, Sec. 7.