**STATE of Indiana, Appellant–Respondent,**

v.

**Hans Avery ECKHARDT, Appellee–Petitioner.**

**No. 26A05–9703–CR–94.**

Court of Appeals of Indiana.

Oct. 31, 1997.

---

William R. Wallace, III, Princeton, for Appellee–Petitioner.

## OPINION

BARTEAU, Judge.

The State appeals a trial court grant of post-conviction relief[1] to Hans Avery Eckhardt, consisting of an order that he be immediately released from incarceration in the Gibson County jail and returned to Tippecanoe County to serve his remaining probation. The State raises a single issue, which we restate as:

> Whether the phrase "total applicable credit time," in the statute providing for reduction of a prison sentence for a prisoner who successfully completes certain educational programs, is limited to credit time for good behavior, or includes both educational credit time and credit time for good behavior?

We affirm.

## FACTS

In November of 1994, Eckhardt was convicted of rape, and on December 9, 1994, the Tippecanoe Superior Court sentenced him to ten years, with six years to be served in prison and four years on probation. The Department of Correction placed Eckhardt in the Gibson County jail. During the entire time he was incarcerated, Eckhardt was in Credit Class I, meaning he earned one day of "good time" credit for each day he served. Eckhardt completed the requirements for an associate's degree and a bachelor's degree from Indiana University while he was incarcerated in the Gibson County Jail.

After serving two years of his six year executed sentence, Eckhardt filed a petition for writ of habeas corpus. The trial court ordered Eckhardt immediately released from prison.

Jeffrey A. Modisett, Attorney General, Jon Laramore, Deputy Attorney General, Indianapolis, for Appellant–Respondent.

---

1. Eckhardt originally filed a petition for writ of habeas corpus, which the trial court dealt with as a petition for post-conviction relief. *See* Ind. Post–Conviction Rule 1 § 1(c). We acknowledge Eckhardt's alternative argument that his action should not have been handled as one for post-conviction relief, and that the Attorney General is not authorized to appeal a habeas corpus order. However, because we affirm, we need not address Eckhardt's alternative ground for relief.

## DISCUSSION

■ There are at least two ways for a prisoner to reduce the length of his or her incarceration by earning "credit time." A person imprisoned for a crime, or who is imprisoned while awaiting trial or sentencing, is initially assigned to "Class I." Ind.Code § 35–50–6–4. If the prisoner violates a prison rule, he or she can be assigned to Class II or III. *Id.* A Class I prisoner earns one day of credit time for each day he or she is imprisoned. Ind.Code § 35–50–6–3. Prisoners in the other classes earn less credit time, or none. *Id.* So, by simply staying out of trouble, an inmate can cut the length of a prison stay in half. *Miller v. Walker*, 655 N.E.2d 47, 48 (Ind.1995) (*Miller II*). The purpose of the legislature in enacting "good time" credit statutes was to encourage inmates of penal institutions to behave well while confined, to improve their morale, and thus to help the prison authorities to maintain order and control. *Dunn v. Jenkins*, 268 Ind. 478, 485, 377 N.E.2d 868, 873 (1978).

The legislature has also provided a second type of credit time which can be used to reduce an inmate's time in prison. A prisoner may earn credit time in addition to "good time" credit if he or she is in Class I for "good time" credit purposes; has "demonstrated a pattern consistent with rehabilitation"; and completes requirements for various types of diplomas or degrees. Ind.Code § 35–50–6–3.3(a). A prisoner earns one year of credit for completion of an associate's degree, and two years for completion of a bachelor's degree. Ind.Code § 35–50–6–3.3(b). The maximum amount of educational credit time an inmate may earn is the lesser of four years or one-third of the prisoner's "total applicable credit time." Ind.Code § 35–50–6–3.3(e).

■ Eckhardt completed requirements for an associate's degree and a bachelor's degree[2] from Indiana University while he was incarcerated, and he was a Class I prisoner during the entire time he was in prison.

Eckhardt's position is that his "good time" credit for his six year sentence was three years, and he is entitled to three years' educational credit for the two degrees he earned. That entitles him to a total credit time of six years. Thus, he reasons, his educational credit becomes two years, because that is one-third of his "total applicable credit time." That amount of credit time reduces the maximum length of his incarceration from six years to four,[3] and by serving two years as a Class I prisoner, he has earned two years of "good time" credit. As a result, Eckhardt argues, he is entitled to be released from prison after serving two full years.

The State urges us to limit the "total applicable credit time" referred to in the educational credit time statute to "good time" credit. Under the State's construction, the maximum education credit Eckhardt would be entitled to is one year—that is, one-third of the three years "good time" credit he could earn as a Class I prisoner with a six year sentence. So, the State would have Eckhardt serve an additional one-half year, because his one year of education credit would leave him with five years to serve, and those five years would be reduced in half by his "good time" credit. The length of his imprisonment would then be two and one-half years instead of two years.

■ We independently determine as a matter of law a statute's meaning and apply it to the facts of the case before us. *Miller v. Walker*, 642 N.E.2d 1000, 1001 (Ind.Ct. App.1994) (*Miller I*), *aff'd*, 655 N.E.2d 47 (Ind.1995). The legislature has not defined the term "total applicable credit time" in Chapter 6 or elsewhere in the Indiana Code. When the legislature does not define a word, we attribute to the word its common and ordinary meaning, unless doing so would deprive the statute of its purpose or effect. *Consolidation Coal Co. v. Indiana Dep't of State Revenue*, 583 N.E.2d 1199, 1201 (Ind. 1991). If a statute is ambiguous, we seek to

---

**2.** In its brief, the State recognizes Eckhardt's bachelor's degree, but nowhere makes mention of his associate's degree. However, the record shows, and the trial court found as a fact, that Eckhardt earned both.

**3.** Education credit time is subtracted from the period of imprisonment originally imposed on the defendant by the sentencing court. *Miller II*, 655 N.E.2d at 47.

ascertain and give effect to the legislature's intent. *Miller I*, 642 N.E.2d at 1002.[4] When doing so, we read the statute as a whole and strive to give effect to all of its provisions. *Id.*

We believe Eckhardt's interpretation is consistent with the statutory context and with the common and ordinary meaning of the words at issue here, in particular with the word "total." We first note that the statute explicitly provides that education credit time is to be granted *in addition to* "good time" credit and in addition to any reduction of sentence a prisoner receives under Indiana Code section 35–38–1–23.[5] Ind. Code § 35–50–6–3.3(a). So, in establishing a mechanism for granting educational credit time, our legislature recognized two other means of sentence reduction, at least one of which it explicitly referred to as a type of "credit time."

The State contends the plain language of the phrase "total applicable credit time" limits the credit time to "good time" credit. But "total" means "[w]hole, not divided, lacking no part, entire, full, complete, the whole amount." *Black's Law Dictionary* 1490 (6th ed. 1990). The legislature, in the education credit time statute itself, explicitly referred to at least one, and possibly two, other types of credit time. So, it must have intended the term "*total* applicable credit time" to include, at the very least, educational credit time as well as "good time" credit. The State's suggestion that the word "total" refers to only one of the two, or possibly three, types of available credit time is simply irreconcilable with the common and ordinary meaning of the word, especially in this context.

Furthermore, this common and ordinary meaning of the word "total" is consistent with an example of the application of the educational credit statute provided by our supreme court:

> The following example is illustrative: A person sentenced to a six-year prison term can expect to serve only three years, assuming he serves all of his time as a Class I prisoner and thereby qualifies for a day of credit for each day served. If he earns a bachelors degree while in prison, entitling him to a two-year credit, he will need only four years of other credit to earn his release. Typically, he could earn those four years by staying in prison two years and registering two years good time. The degree thus allows him to leave prison in two years rather than three.

*Miller II*, 655 N.E.2d at 48. This was exactly what happened to Eckhardt. And while the State correctly notes that the interpretation of the "total applicable credit time" limitation was not before the court in *Miller II*, we believe that the court's example demonstrates the correct application of the statutory limitation in Eckhardt's situation.

### CONCLUSION

The common and ordinary meaning of the language in the educational credit statute limits educational credit time to the lesser of four years or one-third of the prisoner's total applicable credit time, and "total" time includes, at a minimum, both educational credit time and "good time" credit. The trial court correctly determined Eckhardt's release date, and its order is affirmed.

RUCKER and SULLIVAN, JJ., concur.

---

4. We note that in the context of the *Miller I* decision, we found the statute providing education credit against prison time not to be ambiguous. 642 N.E.2d at 1002. However, in *Miller I*, we were not called upon to interpret or apply the phrase "total applicable credit time."

5. That section allows a sentencing court, under some circumstances, to reduce a sentence by as much as two years when an inmate has completed a substance abuse program, a vocational program, or an educational program other than those listed in Ind.Code § 35–50–6–3.3.